**Stephen B. HOLLEY**

v.

**Dr. DEAL, Sandra Hunt, Sreenivasa Reddy Mogali, M.D., Mark T. Fraley, Steve Nyquist.**

No. 3:95–0898.

United States District Court, M.D. Tennessee, Nashville Division.

Dec. 5, 1996.

Bryan E. Larson, Nashville, TN, for plaintiff.

William S. Walton, Kimberly Jennings Dean, John R. Miles, Abigail Turner, Clar-ence J. Gideon, Jr., Nashville, TN, for defendants.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are Defendant Hunt's Motion to Dismiss or For Summary Judgment (Docket No. 10); Defendant Fraley's Motion to Dismiss (Docket No. 19); and Defendant Mogali's Motion to Dismiss or For Summary Judgment (Docket No. 25). For the reasons stated herein, Defendant Hunt's Motion to Dismiss or For Summary Judgment (Docket No. 10) is GRANTED; Defendant Fraley's Motion to Dismiss (Docket No. 19) is GRANTED; and Defendant Mogali's Motion to Dismiss or For Summary Judgment (Docket No. 25) is GRANTED.

Plaintiff is an inmate within the Tennessee Department of Correction ("TDOC") who has been housed at the Lois M. DeBerry Special Needs Facility and other TDOC facilities for more than twenty years. Plaintiff filed this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging deliberate indifference to his medical needs, specifically that Defendants forced him to take medication, which he did not want or need, in order to control him. Defendant Fraley, who is Plaintiff's court-appointed, limited guardian, has moved to dismiss the claims against him. Defendant Fraley, on behalf of Plaintiff, consented to the medication at issue. Defendants Hunt and Mogali, who are medical doctors hired by TDOC, have moved for summary judgment.

## DEFENDANT FRALEY'S MOTION TO DISMISS

In considering a motion to dismiss, the court must accept as true all factual allegations in the complaint. *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 996 (6th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2137, 128 L.Ed.2d 866 (1994). The motion should only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.*

■ In addition, a motion to dismiss for failure to state a claim upon which relief can be granted must be viewed in the light most

favorable to the party opposing the motion. *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.*, 856 F.Supp. 1229, 1232 (S.D.Ohio 1994). The purpose of a motion to dismiss for failure to state a claim is to allow the defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

Here, Defendant Fraley asserts that Plaintiff's Complaint against him must be dismissed for two reasons: (1) Defendant Fraley's actions were not taken "under color of state law;" and (2) the Complaint fails to allege specific facts constituting a constitutional violation by Defendant Fraley.

On March 4, 1988, Defendant Fraley was appointed by the Chancery Court of Davidson County, Tennessee, as Plaintiff's limited guardian for the purpose of providing consent to forcible administration of drugs if deemed necessary. Thus, Defendant Fraley's duties as guardian are, and have always been, limited.

Under Section 1983, a plaintiff must allege that he was deprived of a right secured by the U.S. Constitution or laws *by a person acting under color of state law.* 42 U.S.C. § 1983. Section 1983 erects no shield against merely private conduct, however discriminatory or wrongful. *Mineo v. Transp. Management of Tenn., Inc.*, 694 F.Supp. 417, 423 (M.D.Tenn.1988); *Perdue v. Quorum, Inc.*, 934 F.Supp. 919, 922 (M.D.Tenn.1996).

There is ample authority for Defendant's proposition that he, as limited guardian, did not act "under color of state law," for purposes of Section 1983. For example, in *Snyder v. Talbot*, 836 F.Supp. 19 (D.Me. 1993), cited by both parties, the court held: "The only instances of cases that classify guardians as state actors involve situations in which the guardian takes on substantial authority, conferred by the state, for long term involvement in overseeing a minor's or incompetent's well-being." *Id.* at 24, n. 7.

Here, Defendant Fraley is a *limited* guardian, for a limited purpose. He has not taken on substantial authority for long term involvement in overseeing Plaintiff's well-being. He is appointed solely for the purpose of consent to medication.

Thus, Plaintiff's reliance upon *Thomas S. v. Morrow*, 781 F.2d 367 (4th Cir.1986), *cert. denied*, 476 U.S. 1124, 106 S.Ct. 1992, 90 L.Ed.2d 673 (1986), is misplaced, since in *Thomas,* the guardian had far more pervasive authority over the ward than does Defendant Fraley over Plaintiff.

In *Thomas,* the guardian was given a full panoply of powers under North Carolina law as guardian for Thomas S. *Id.* at 377. He could establish his ward's domicile and provide for his training and treatment. He could give consent or approval for any medical, legal, psychological or other professional care, counsel, treatment or service. Essentially, he made decisions for Thomas S. *Id.* The court noted that there was no doubt that the guardian had custody of his ward. *Id.* Finally, the court stated that the powers of this guardian were so pervasive that in his absence complete relief could not be afforded. *Id.* at 378.

In contrast, here, Defendant Fraley has no voice in any decisions by or concerning Plaintiff other than his medication. Defendant Fraley certainly does not have custody of Plaintiff. His powers do not extend to the full extent of Tennessee law, and his authority is in no way "pervasive."

In *Levine v. County of Westchester*, 828 F.Supp. 238, 244 (S.D.N.Y.1993), the court held that guardians do not represent their clients under color of state law for purposes of Section 1983 when they function as fiduciaries who must act in their ward's best interest. In *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir.1986), the court reasoned that guardians ad litem are analogous to public defenders, who assume no "obligation to the mission [of] the state" but rather owe a duty of undivided loyalty to protect a private individual's interest and exercise independent professional judgment in carrying out that duty. *Id.* at 155 (*cited in Levine*, 828 F.Supp. at 244).

Finally, in *Doe v. Bobbitt*, 665 F.Supp. 691, 694 (N.D.Ill.1987), the court (citing *Meeker*) stated: "Because a guardian ad litem owes his undivided loyalty to the minor whose

interests he represents, courts have reasoned that guardians ad litem, like public defenders, do not act under color of state law in fulfilling their official duties." *Id.*

The Court also notes that Defendant Fraley does not satisfy the three tests set forth by the Supreme Court for establishing a "state actor." Those tests are: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992); *Perdue,* 934 F.Supp. at 922.

The public function test requires that the private person exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain. *Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir.1995). Consent to medication is not a power which is traditionally exclusively reserved to the state.

The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. *Wolotsky,* 960 F.2d at 1335. "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.* (citing *Blum v. Yaretsky,* 457 U.S. 991, 1005–06, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982)). Here, the state exercised no coercive power over Defendant Fraley's independent judgment as to Plaintiff's medication. Indeed, Defendant Fraley is obligated to exercise independent judgment and to protect the interest of the Plaintiff against the state.

Finally, under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the latter may be fairly treated as that of the state itself. *Wolotsky,* 960 F.2d at 1335. It must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of Section 1983. *Id.* The Court finds no such nexus in this case. As noted above, Defendant Fraley is under a duty to act independently, as the limited guardian for Plaintiff, for purposes of consent to medication.

Thus, the Court finds that Defendant Fraley's actions, as limited guardian for Plaintiff, are and were not taken "under color of state law."

Alternatively, the Court notes that, even if Defendant Fraley were found to be acting "under color of law," many courts find guardians, such as Defendant Fraley, to be absolutely immune from civil rights actions. *See, e.g., Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984); *Fleming v. Asbill,* 42 F.3d 886, 889 (4th Cir.1994) (guardian entitled to quasi-judicial immunity on all civil rights claims, even if she lied to judge in open court); *Offutt v. Kaplan,* 884 F.Supp. 1179, 1192 (N.D.Ill.1995) (guardian entitled to immunity for damages liability under § 1983 for his actions as judicial officer in proceeding); *Gardner by Gardner v. Parson,* 874 F.2d 131, 146 (3d Cir.1989) (guardian should be absolutely immune from liability for civil rights violations); and *McCuen v. Polk County, Iowa,* 893 F.2d 172, 174 (8th Cir. 1990).

For all these reasons, Plaintiff has failed to state a claim for which relief may be granted against Defendant Fraley under Section 1983, and Defendant Fraley's Motion to Dismiss is GRANTED.[1]

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As provided in Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

1. As noted hereafter, if Plaintiff has a claim to remove the limited guardian or for breach of the limited guardian's fiduciary duties to him, those claims are not properly brought in this Court and do not, without more, raise constitutional claims.

matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). Of course, the court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14, 91 L.Ed.2d at 216.

The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

The Supreme Court concluded in *Anderson* that a dispute about a material fact is "genuine" within the meaning of Rule 56 only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the non-moving party's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co. v. Elmore Dev. Co., Inc.*, 921 F.2d 1343, 1349 (6th Cir.1991). The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

From December 1992 to February 1996, Defendant Sandra Hunt was employed as Director of Mental Health at Lois M. DeBerry Special Needs Facility in Nashville. From February 1985 through December 1989, Defendant Sreenivasa Reddy Mogali was a staff psychiatrist at the DeBerry Correctional Institute in Nashville. Defendants Hunt and Mogali assert that they are entitled to summary judgment on three bases: (1) statute of limitations; (2) no due process violation; and (3) no deliberate indifference to Plaintiff's medical needs.

## A. STATUTE OF LIMITATIONS

Defendants first assert that all of Plaintiff's claims which arose before September 15, 1994, are barred by the applicable one-year statute of limitations. Tenn.Code Ann. § 28–3–104(a)(3). Plaintiff, on the other hand, argues that his cause of action did not *accrue* until he discovered the existence and cause of his alleged injury. Also, Plaintiff argues that the violation of his civil rights was continuous in nature and, therefore, is not time-barred.

Because the Court believes that the issues of when Plaintiff discovered his injury and whether his rights were continuously violated involve questions of fact, it cannot grant summary judgment on that basis.

## B. DUE PROCESS

Defendants next argue that there was no due process violation in this case. In order to determine whether there was a due process violation, of course, the Court must determine what process was due, under these circumstances.

The Tennessee Department of Correction, on March 4, 1988, petitioned the Davidson County Chancery Court to appoint a limited guardian for Plaintiff for the purpose of providing consent to the forcible administration of drugs, if deemed necessary. *Tennessee Dept. of Correction v. Holley*, Civil Action No. 88–553–I, Davidson County Chancery Court, filed with Defendant Hunt's Notice of Filing (Docket No. 13). In response to the petition, Chancellor Kilcrease appointed Robert F. Spann as counsel for Plaintiff in that

cause, to represent Plaintiff's interests in the limited guardianship proceedings. *Id.*

After a hearing on March 17, 1988, upon the testimony of two doctors, the Davidson County Chancery Court found Plaintiff to be "a disabled person as defined in T.C.A. § 34–3–102(2) [now § 34–11–101(7)] by reason of his present mental condition" and found him to be "incompetent to make decisions regarding his medical treatment." *Id.* (Order, Davidson County Chancery Court Civil Action No. 88–553–I, entered March 25, 1988). In his order, Chancellor Kilcrease appointed a limited guardian, Defendant Fraley, for the sole purpose of consent to medication, specifically granting him the "authority to provide consent for the forcible administration of chemotherapy." *Id.* Since entry of that Order, Defendant Fraley has carried out his duties in the role of limited guardian and has filed nine reports to the Chancellor regarding Plaintiff's medical status. *See* documents attached to Defendant Hunt's Notice of Filing (Docket No. 13). To this Court's knowledge, the Chancery Court Order appointing the limited guardian was never appealed, and Plaintiff has filed no objections to the limited guardian's nine reports.

■■■■■■ Certainly, prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990). And certainly a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. *Cruzan by Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 278, 110 S.Ct. 2841, 2851, 111 L.Ed.2d 224 (1990).

In dealing with an incompetent person, however, the analysis is more complex. In *Cruzan,* the Supreme Court stated: "An incompetent person is not able to make an informed and voluntary choice to exercise a hypothetical right to refuse treatment or any other right. Such a 'right' must be exercised for her, if at all, by some sort of surrogate."

*Id.,* 497 U.S. at 280, 110 S.Ct. at 2852. The Court then looked to state law to determine under what circumstances a surrogate could act for the patient in electing to refuse treatment. *Id.*[2]

■■■■ This Court finds that Defendants have provided the process which was due to Plaintiff in this case. The case law is clear that a state is not authorized to make a decision to consent to or retract medical treatment for a person incompetent to make decisions for himself, but rather must appoint a guardian to protect the person's interest and make medical decisions. *Woodland v. Angus,* 820 F.Supp. 1497, 1516–17 (D.Utah 1993). In *Woodland,* the court cited *Cruzan* and held:

> If the State of Utah wishes to exercise substituted judgment for plaintiff, it cannot do so merely by showing that psychotropic medication is in plaintiff's medical best interest. Rather, the State must proceed according to the [sic] its own laws for the appointment of a guardian for incompetent persons. Such a procedure provides sufficient protection of all significant interests involved.

*Id.* at 1517.

Here, Tennessee state law expressly provided that a limited guardian could be appointed to "consent to medical and mental examinations and treatment to the extent ordered by the court." Tenn.Code Ann. § 34–4–112(4) (1991) [now repealed]. Thus, Tennessee law allowed for the exercise of this right of consent by a "surrogate" when a limited guardian was appointed by the court.

In *Scott v. Plante,* 532 F.2d 939 (3d Cir. 1976), the court held that where a person committed to the state psychiatric hospital as being insane had never been adjudicated incompetent and incapable of giving informed consent to medical treatment, due process required, in the absence of emergency, some form of notice and opportunity to be heard be given to such individual (or to someone standing *in loco parentis* to him) before he could be subject to involuntary medication.

**2.** In *Cruzan,* the state required clear and convincing evidence of the incompetent's wishes as to the withdrawal of treatment, a procedure which the Supreme Court found to be constitutional. *Id.*

*Id.* at 946. Here, in contrast, Plaintiff *was* adjudicated incompetent and incapable of giving informed consent to medical treatment, and a limited guardian was appointed for that very purpose.

Under the holdings of *Cruzan* and *Woodland,* this Court finds the procedural safeguards exercised in this case to be sufficient due process. The Court notes that if Plaintiff disagrees with the appointment of the limited guardian, has claims for breach of fiduciary duty of the limited guardian, or has reasons to remove the limited guardianship, those claims are not properly brought in this Court and do not, without more, raise a constitutional claim.

Accordingly, Plaintiff has failed to state a claim for violation of his due process rights under the Fourteenth Amendment, and Defendants Hunt and Mogali are entitled to summary judgment on that claim.[3]

## C. DELIBERATE INDIFFERENCE

Under the Eighth Amendment, prison inmates have a right to a certain level of medical care and "deliberate indifference to the serious medical needs" of a prisoner violates this Eighth Amendment right by subjecting them to cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The *Estelle* standard encompasses two components: objectively, the medical needs must be sufficiently serious, and subjectively, the state actors involved must have acted in a deliberately indifferent manner. *Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir.1992).

To establish a serious medical need, it is not necessary for a plaintiff to show that he suffered an actual, tangible physical injury from the defendants' alleged actions. *Boretti v. Wiscomb,* 930 F.2d 1150, 1154 (6th Cir.1991). The fact that a plaintiff endured unnecessary pain and suffering is sufficient for an Eighth Amendment claim. *Id.* The medical need at issue, however, must be serious enough to implicate constitutional concerns. *See Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *Caldwell v. Moore,* 968 F.2d 595, 602 (6th Cir.1992). The Court does not doubt that forced medication of the drugs at issue here raises serious medical concerns.

With respect to the subjective component of an Eighth Amendment claim, however, a plaintiff must show that a defendant acted with a sufficiently culpable state of mind when committing the acts alleged to have deprived the plaintiff of medical care. *Wilson v. Seiter,* 501 U.S. 294, 302, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). This requires both that the defendant have been actually aware of a prison inmate's serious medical need or of an excessive risk to his health, and that he consciously disregarded this need or risk in a manner evidencing wantonness. *Farmer v. Brennan,* 511 U.S. 825, 837–38, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). In *Farmer,* the Supreme Court equated this state of mind with subjective recklessness. *Id.* at 837–39, 114 S.Ct. at 1979–80.

While a prisoner need not show that a prison official acted or failed to act with an intent to cause harm or with a belief that harm would actually occur, the prisoner must show more than an objectively unreasonable act on the part of the defendant. *Id.* A showing that the official, with the benefit of hindsight, could have taken a different action will not suffice to show deliberate indifference. *Id.* Negligence will not support a claim under the Eighth Amendment. *Estelle,* 429 U.S. at 105–06, 97 S.Ct. at 291–92.

Construing the evidence in the light most favorable to the Plaintiff, as the Court must do, the Court does not believe that Plaintiff's allegations rise to the level of "deliberate indifference." Although Defendants Hunt and Mogali were no doubt aware of the serious nature of forced medication and the risks thereof, there is simply no evidence that would support a finding that these Defendants acted with the type of wantonness necessary to support a claim of deliberate indifference.

First, as indicated above, the Davidson County Chancery Court had appointed a lim-

---

**3.** The Court finds it unnecessary to determine whether Defendants Hunt and Mogali are enti- tled to qualified immunity.

ited guardian for the expressed purpose of consenting to Plaintiff's medication, and it appears[4] that the limited guardian did so consent on the occasions in question. Second, the medical records filed with this Court indicate that Plaintiff has clearly received medical treatment and attention. Third, Plaintiff has filed nothing to rebut Defendant Hunt's sworn testimony that she is not a medical doctor, has never "treated" Plaintiff, and could not properly do so.[5]

Where a prisoner has received some medical treatment and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir.1976).

Plaintiff has failed to show that Defendants Hunt and Mogali were "deliberately indifferent" to his medical needs. To the contrary, it appears that the Defendants were attentive to Plaintiff's medical needs. Therefore, Plaintiff has failed to state an Eighth Amendment claim for deliberate indifference against Defendants Hunt and Mogali, and they are entitled to summary judgment on that claim.

## CONCLUSION

For the foregoing reasons, Defendant Fraley's Motion to Dismiss (Docket No. 19) is GRANTED, and Plaintiff's claim against Defendant Fraley is DISMISSED. In addition, Defendant Hunt's Motion for Summary Judgment (Docket No. 10) is GRANTED, and Defendant Mogali's Motion for Summary Judgment (Docket No. 25) is GRANTED.

This case is REFERRED to the Magistrate Judge for further customized case management.

It is so ORDERED.

---

**4.** Plaintiff makes no argument that he was force-medicated *without* the limited guardian's consent.

**5.** Plaintiff's citation to Exhibit B of the Complaint, a December 2, 1993 letter from Defendant Hunt to Plaintiff, does nothing more than support the argument that Defendant Hunt, as an *administrator*, not as a doctor, was attentive to Plaintiff's concerns and referred them to a medical doctor, who was more qualified and more appropriately situated to attend to them.