IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 11, 2024 Session

## JOHN STALNAKER, JR. v. CAROLE CUPP

**Appeal from the Chancery Court for Williamson County**
**No. 22CV-51859     Deanna B. Johnson, Chancellor**

_____

### No. M2023-00404-COA-R3-CV
_____

The beneficiary of a trust sued the trustee, who also served as the executor of the estate of the beneficiary's stepmother, for various claims, including breach of fiduciary duty and conversion. The trustee moved to dismiss the petition pursuant to Tenn. R. Civ. P. 12.02(6), and the trial court granted the motion after concluding that the breach of fiduciary duty claim was time-barred and that the petition failed to allege facts sufficient to establish a claim for conversion. Discerning no error, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Mark T. Freeman and Kristen Jade Johnson, Nashville, Tennessee, for the appellant, John Stalnaker, Jr.

Patricia R. Young, Franklin, Tennessee, for the appellee, Carole L. Cupp.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

The dispute in this appeal concerns an inter vivos trust established by John Hill Stalnaker, Sr. ("John Sr.") and his wife, Mary L. Stalnaker ("Mary"). John Sr. and Mary (collectively, "the Trustors") created this trust in San Diego, California on May 8, 1981, and it was known as the John Hill Stalnaker Sr. and Mary L. Stalnaker Revocable Trust No. 1 ("Trust No. 1"). The opening paragraph of Trust No. 1 provided that the trust consisted of "the property described in Schedules A and B attached to this instrument." Section 1.02 stated that the property listed in Schedule A was the "community or quasi-community property of the Trustors" and that the property listed in Schedule B was "any

and all separate property of the Trustors." Section 8.01 identified John Sr. and Mary as the original trustees of Trust No. 1.

According to the terms of Trust No. 1, the trust would be divided into two separate trusts upon the death of either John Sr. or Mary. These two separate trusts were identified as the "Survivor's Trust" and the "Residual Trust." Whichever spouse survived the other was to be referred to as the "Surviving Spouse" and was to immediately resign as trustee of either the Survivor's Trust or the Residual Trust. Section 3.04 of Trust No. 1 directed that the Survivor's Trust was to include "the Surviving Spouse's interest in the Trustor's community estate and the Surviving Spouse's separate estate, if any." The Survivor's Trust was to benefit the Surviving Spouse.

Section 3.05 of Trust No. 1 provided that the Residual Trust would "consist of the balance of the trust estate" not included in the Survivor's Trust. The Second Amendment to Trust No. 1 renamed the Residual Trust as the Maximum Credit Trust ("MCT"). In the event that Mary was the Surviving Spouse, section 3.07(b) identified John Sr.'s son, John H. Stalnaker, Jr. ("Mr. Stalnaker" or "John Jr."), as the sole beneficiary of the MCT. The Third Amendment to Trust No. 1 appointed Mr. Stalnaker and Mary's sister, Carole L. Cupp, as co-trustees of the MCT.

John Sr. died testate on November 18, 2000, in San Diego, California. Mary moved to Franklin, Tennessee in 2001, and she died testate in 2009. Ms. Cupp served as the executor of Mary's estate, and she was the sole beneficiary of Mary's estate. She filed a motion to admit Mary's estate to probate on September 22, 2009, and the estate was closed on May 12, 2011. Approximately three years later, in July 2014, Mr. Stalnaker suffered a life-threatening stroke that impaired his mental faculties for several years.

After regaining his mental faculties in February 2020, John Jr. sent a letter to Ms. Cupp on March 12, 2020, demanding an accounting of the assets in the MCT. In the demand letter, Mr. Stalnaker warned that, if Ms. Cupp failed to provide an accounting, he might file a lawsuit to recover from Ms. Cupp for breach of fiduciary duties. The demand letter went unanswered, and Mr. Stalnaker initiated suit against Ms. Cupp in California by filing a Petition to Compel an Accounting; Removal of Trustee. In the petition, he asserted claims for "Breach of Fiduciary Duty, Misappropriation of Trust Assets and Other Misconduct." The California court dismissed the case on January 21, 2021, after finding it lacked jurisdiction. Over a year later, on September 20, 2022, Mr. Stalnaker initiated the present case against Ms. Cupp by filing a petition in the Chancery Court for Williamson County. He asserted claims for breach of fiduciary duty,[1] breach of contract, and

_____

[1] In his petition, Mr. Stalnaker claimed that Ms. Cupp owed him certain fiduciary duties by virtue of being a co-trustee of the MCT and the executor of Mary's estate, and he asserted that Ms. Cupp breached these duties by failing to provide him an accounting of Mary's estate as required by Tenn. Code Ann. § 30-2-601. He also claimed that Ms. Cupp breached her fiduciary duty to administer the MCT and Mary's estate impartially and in fairness to the beneficiaries of each.

conversion.  Mr. Stalnaker took the position that the statutes of limitations applicable to his claims were tolled by Ms. Cupp's fraudulent concealment and by his mental incapacity while he recovered from his stroke.

Ms. Cupp responded by filing a motion to dismiss arguing that the petition failed to state a claim upon which relief could be granted and that the action was barred by the applicable statutes of limitations.  She attached several documents to the motion, including the court order dismissing the California lawsuit.  In the motion to dismiss, Ms. Cupp also sought alternative relief for judgment on the pleadings pursuant to Tenn. R. Civ. P. 12.03.[2] Mr. Stalnaker filed a response in opposition to the motion to dismiss requesting a reasonable opportunity to present material evidence and conduct discovery to address the issues raised by Ms. Cupp.

After a hearing on Ms. Cupp's motion, the trial court dismissed all of Mr. Stalnaker's claims.  The court reasoned that fraudulent concealment and mental incapacity did not toll his breach of fiduciary duty claim.  In making this determination, the court referenced the California litigation and found that "Petitioner initiated the California litigation, ending any tolling based on the alleged fraudulent concealment."  As for the breach of contract claim, the court held that the petition failed to state a claim upon which relief could be granted because it failed to allege facts establishing that a contract existed between Ms. Cupp and Mr. Stalnaker.  Finally, the trial court concluded that the petition failed to state a claim for conversion because it failed to allege facts identifying the property Ms. Cupp converted from the MCT.

Mr. Stalnaker appealed and presents several issues for our review that we consolidate and restate as follows:  whether the trial court erred in granting the motion to dismiss.

STANDARD OF REVIEW

Motions to dismiss filed pursuant to Tenn. R. Civ. P. 12.02(6) challenge "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)*.*  A defendant filing a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"  *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).  When determining whether a complaint should be dismissed for failure to state a claim under Rule 12.02(6), the court "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all

---

[2] Mr. Stalnaker argues that it was improper for Ms. Cupp to request this alternative relief "because no responsive pleading had been filed."  We need not consider this argument, however, because the trial court based its ruling on Tenn. R. Civ. 12.02(6), not on Rule 12.03.

reasonable inferences.'" *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002)). The court should grant a motion to dismiss if it appears that the plaintiff cannot prove any set of facts in support of the claim entitling him or her to relief. *Webb*, 346 S.W.3d at 426. A trial court's decision regarding the adequacy of a complaint involves a question of law, which we review de novo with no presumption of correctness. *Myers v. AMISUB(SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).

ANALYSIS

## I. Breach of Fiduciary Duty

### A. Matters outside of the Pleadings

Mr. Stalnaker first contends that the trial court erred in granting the motion to dismiss because, in making its decision, the court improperly considered matters outside of the pleadings. Specifically, he believes the trial court improperly considered matters outside of the pleadings in ruling that the one-year statute of limitations for filing his breach of fiduciary duty claim was not tolled by fraudulent concealment. *See* Tenn. Code Ann. § 35-15-1005(a)-(b) (stating that "[a] beneficiary . . . shall not commence a proceeding against a trustee . . . for breach of trust more than one year" after receiving information disclosing facts indicating the existence of a potential claim for breach of trust or after possessing "actual knowledge" of a potential claim for breach of trust). Thus, Mr. Stalnaker asserts, the motion should have been converted to one for summary judgment, and he should have been permitted an opportunity to conduct discovery. He correctly points out that, if a defendant submits "'affidavits or other proof' outside of a motion to dismiss, and the court does not exclude those outside matters, 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" *Est. of Blankenship v. Bradley Healthcare & Rehab. Ctr.*, 653 S.W.3d 709, 712 (Tenn. Ct. App. 2022) (quoting TENN. R. CIV. P. 12.02(6)). Without a doubt, Ms. Cupp presented matters outside the pleadings to the trial court by attaching numerous documents to the motion to dismiss, including correspondence between Mary and a California attorney about the MCT and Mr. Stalnaker, amendments to Mary's will, and the court order dismissing the California litigation. The question, then, is whether the trial court improperly considered any of those outside matters (or failed to exclude them) in ruling that the breach of fiduciary claim should be dismissed.

A review of the trial court's order granting the motion to dismiss shows that the trial court did not expressly state that it excluded the outside matters. But, this Court has previously held that "the trial court need not *expressly* state that it has chosen to exclude" outside matters for them to be excluded. *Asbury v. Lagonia-Sherman, LLC*, No. W2001-01821-COA-R3-CV, 2002 WL 31306691, at *3 (Tenn. Ct. App. Oct. 15, 2002). The outside matters "may be considered excluded if the court's order implies that such

- 4 -

information was excluded." *Est. of Blankenship*, 653 S.W.3d at 713 (citing *Asbury*, 2002 WL 31306691, at *3). For example, in *Winchester v. Little*, 996 S.W.2d 818, 821 (Tenn. Ct. App. 1998), the defendant filed a motion to dismiss and presented matters outside the pleadings. The trial court granted the motion and "couched [its order] in terms of a dismissal," but it did not expressly state that it had excluded the outside matters. *Id.* On appeal, this Court concluded that the order was one for dismissal rather than summary judgment, noting that the trial court stated that it based its decision on "the pleadings and argument of Plaintiff and counsel for Defendant" and did not mention considering matters outside the pleadings. *Id.*

Similarly, in *Asbury*, the trial court granted a motion to dismiss and did not expressly state that it excluded outside matters that were presented with the motion. 2002 WL 31306691, at *3-4. The record showed that the parties had conducted "considerable discovery" and the defendants had requested summary judgment as alternative relief. *Id.* at *4. On appeal, this Court concluded that the trial court's order should be considered one for summary judgment because, unlike in *Winchester*, the trial court "d[id] not state which documents [it] relied upon in making [its] decision," and the circumstances "d[id] not indicate clearly enough that matters outside the pleadings" were excluded. *Id.*

The situation here is more akin to the one presented in *Winchester*. As in that case, the trial court's order was "couched in terms of a dismissal." Although the trial court did not expressly state what it considered in making its decision, the court cited to the record throughout the order. From these citations, the court showed that it relied on Mr. Stalnaker's petition and its attachments and on the arguments presented in Ms. Cupp's motion to dismiss. The only matter outside of the pleadings referenced by the trial court was the court order dismissing the California litigation. This Court has recognized that there are exceptions to the general rule that consideration of outside matters converts a Rule 12.02(6) motion to a motion for summary judgment. Those exceptions are as follows:

> "Numerous cases, as the note below reflects, have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.
>
> Wright and Miller, *Federal Practice and Procedure, Civil* § 1357, p. 376 (3d ed.2004). The above, as noted, is reflected in numerous court decisions and is well recognized. *See, e.g.*, *Wyser-Pratte Management Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir.2005) ("In addition to allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for taking judicial notice"); *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir.2000) (court may

consider SEC disclosure documents without converting motion to dismiss to summary judgment).”

*Western Exp., Inc. v. Brentwood Servs., Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at \*3 (Tenn. Ct. App. Oct. 26, 2009) (quoting *Ind. State Dist. Council of Laborers v. Brukardt,* No. M2007-02271-COA-R3-CV, 2009 WL 426237, at \*8 (Tenn. Ct. App. Feb.19, 2009)).

In *Western Express, Inc. v. Brentwood Services, Inc.*, we relied on the above exceptions to the general rule to conclude that the trial court's consideration of a settlement agreement entered in a separate case by a court in a different county did not convert the motion to dismiss into a motion for summary judgment because the settlement agreement was "a public record of which the court could take judicial notice." *Id.* Similarly, in the present case, the California order was a matter of public record.[3] And, as will be discussed in more detail later in this opinion, the court relied on the California court order to find that, even if the statute of limitations for the breach of fiduciary duties claim was tolled due to fraudulent concealment, the claim was still time-barred because he did not initiate the current lawsuit until twenty months after the California litigation was dismissed. In other words, the court considered the California order not for the truth of the assertions contained in it, but rather as indicating the latest possible date the statute of limitations began to run.[4] Thus, the trial court did not err in considering the order in its Rule 12.02(6) analysis.

B. Discovery

Mr. Stalnaker next contends that the trial court should have concluded that the statute of limitations for his breach of fiduciary duty claim had not commenced running as of the date of the motion hearing because he had not been afforded "a reasonable opportunity" to conduct discovery. Essentially, Mr. Stalnaker's argument here is that, without discovery, he lacked the requisite knowledge of the existence of a claim to commence the running of the statute of limitations due to Ms. Cupp's fraudulent concealment of information about the trusts and her failure to respond to his demands for an accounting. We must respectfully disagree.

---

[3] Under California law, "[p]ublic records are open to inspection at all times during the office hours of a state or local agency and every person has a right to inspect any public record[.]" Cal. Gov. Code § 7922.525(a). California defines "public records" as "any writing containing information relating to the conduct of the public's business prepared, owned, used or retained by any state or local agency regardless of physical form or characteristics." Cal. Gov. Code § 7920.530(a).

[4] "Courts may consider public records for the truth of the statements contained within them only when the 'contents prove facts whose accuracy cannot reasonably be questioned.'" *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)); *see also State ex rel. Harman v. Trinity Indus., Inc.*, No. M2022-00167-COA-R3-CV, 2023 WL 3959887, at \*19 n.30 (Tenn. Ct. App. June 13, 2023).

The statute of limitations for actions against a trustee for breach of trust, or breach of fiduciary duty, is located in Tenn. Code Ann. § 35-15-1005, which states, in pertinent part, as follows:

> (a) A beneficiary, trustee, trust advisor, or trust protector shall not commence a proceeding against a trustee, former trustee, trust advisor, or trust protector for breach of trust more than one (1) year after the earlier of:
> (1) The date the beneficiary . . . was sent information that adequately disclosed facts indicating the existence of a potential claim for breach of trust; or
> (2) The date the beneficiary . . . possessed actual knowledge of facts indicating the existence of a potential claim for breach of trust.
> (b) For purposes of this section, facts indicate the existence of a potential claim for breach of trust if the facts provide sufficient information to enable the beneficiary . . . to have actual knowledge of the potential claim, or have sufficient information to be presumed to know of the potential claim or to know that an additional inquiry is necessary to determine whether there is a potential claim.

Thus, as the trial court found, possessing information that discloses facts indicating the existence of a claim is only one of the ways the statute of limitations starts to run. *See* Tenn. Code Ann. § 35-15-1005(a). The statute of limitations may also start running from the moment a petitioner possessed actual knowledge that a *potential* claim for breach of trust existed. Tenn. Code Ann. § 35-15-1005(b). In other words, the statute does not require a petitioner to possess actual knowledge of a breach of fiduciary duty. It merely requires that a petitioner possess actual knowledge of the possibility that a breach of fiduciary duty has occurred. *Id.*

In this case, the March 12, 2020 letter Mr. Stalnaker sent to Ms. Cupp demanding an accounting and threatening litigation indicates that he possessed actual knowledge of the possibility that a breach of fiduciary duty had occurred. The claim, therefore, commenced running from that date, and it should have been filed in the trial court prior to March 12, 2021. Even if the March 12, 2020 letter did not constitute evidence that Mr. Stalnaker possessed actual knowledge of the potential claim for breach of fiduciary duty, he necessarily possessed actual knowledge of the potential for such a claim when he initiated the California lawsuit in September 2021 asserting a claim for breach of fiduciary duty. When that case was dismissed on jurisdictional grounds in January 2021, however, Mr. Stalnaker did not file his claim in the trial court until twenty months later. We therefore agree with the trial court's conclusion that, whether the statute of limitations began running in March 2020 or in September 2021, the statute of limitations lapsed long before Mr. Stalnaker filed his breach of fiduciary duty claim.

## II.  Conversion

Finally, Mr. Stalnaker asserts that the trial court erred in concluding that fraudulent concealment did not toll the three-year statute of limitations for his conversion claim.[5]  *See* Tenn. Code Ann. § 28-3-105(2) (stating that "[a]ctions for the detention or conversion of personal property" "shall be commenced within three (3) years from the accruing of the cause of action").  We do not reach this tolling question, however, because another issue is dispositive.  In particular, although the trial court found that fraudulent concealment did not toll the statute of limitations for the conversion claim, the court concluded that the claim should be dismissed because Mr. Stalnaker's petition failed to allege facts sufficient to establish a claim for conversion.

"Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights."  *PNC Multifamily Cap. Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012).  To succeed in an action for conversion, a party must prove three elements:  "'(1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel.'" *Transfill Equip. Supplies & Servs. v. Advanced Med. Equip., LLC*, No. M2016-00288-COA-R3-CV, 2017 WL 2365017, at *8 (Tenn. Ct. App. May 31, 2017) (quoting *White v. Empire Exp., Inc.*, 396 S.W.3d 696, 720 (Tenn. Ct. App. 2012)).  Further, "[t]o state a claim for misappropriation or conversion," under Tenn. R. Civ. P. 9.02, a party must "plead all acts of misappropriation with particularity."  *PNC Multifamily Cap.*, 387 S.W.3d at 555.

In the petition, Mr. Stalnaker asserted that Ms. Cupp wrongfully converted funds from the MCT into Mary's property and then improperly disbursed those funds through the administration of Mary's estate.  He alleged the following facts in support of his claim for conversion:

> 51.  The Respondent, Cupp, converted funds of the [MCT] into property of the estate of Mary Stalnaker while trust funds belonging to the Petitioner, John Jr., were to be kept separate and accounted for with all disbursements being made to him as outlined in the trust.
> 52.  The Respondent, as of this date, has provided no accounting or disclosure of Mary Stalnaker's estate accounts nor information as to the assets or distributions of said trust belonging to John Stalnaker Sr. as the initial Deceased Spouse.

---

[5] In his appellate brief, Mr. Stalnaker asserted a similar argument for the breach of contract claim that the trial court dismissed.  At oral arguments, however, his attorney abandoned this argument, informing the Court that her arguments on this issue were limited to the conversion claim.

These allegations fail to identify any specific property belonging to Mr. Stalnaker and, therefore, fall short of the particularity requirements set forth in Tenn. R. Civ. P. 9.02 for pleadings sounding in fraud. Moreover, the trust documents attached to the petition do not identify any property belonging to Mr. Stalnaker. As Ms. Cupp points out, the opening paragraph of Trust No. 1 stated that the trust consisted of "the property described in Schedules A and B attached to this instrument." Trust No. 1, however, had no Schedule A or B attached to it. The First Amendment to Trust No. 1 made changes to certain distributions from Trust No.1, but it also failed to provide any itemization of the assets to be held in the trust. The second amendment to Trust No. 1 included a page titled Schedule A that stated "[a]ll real and personal property standing in the name of either party hereto . . .," but no real or personal property was listed. The second amendment also included a page titled "Schedule B." But for the title, however, that page is blank. Thus, Mr. Stalnaker failed to allege facts establishing what, if any, assets were in the MCT, much less any assets that belonged to him, that could have been converted by Ms. Cupp. As a result, we agree with the trial court's conclusion that the petition failed to allege facts sufficient to establish a claim for conversion.

In light of the foregoing, we affirm the trial court's dismissal of Mr. Stalnaker's petition.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, John Stalnaker, Jr., for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

- 9 -